(19 App. Div. 466.)

## PEOPLE v. JARVIS.

(Supreme Court, Appellate Division, Third Department. July 6, 1897.)

1. PEDDLERS—WHO ARE.
   Evidence of a single sale of goods is insufficient to prove the seller to be a peddler.

2. LICENSE FEE—WHAT CONSTITUTES.
   A license fee, properly so-called, is such a sum as will compensate for the expense of issuing and recording the license. and, where the license is issued for the purpose of securing police control over the matter licensed, such further sum as will probably be incurred in inspecting and regulating the business.

3. LICENSE—CONSTITUTIONAL LAW.
   It seems that the provision of the charter of the village of Norwich (Laws 1895, c. 374, tit. 3, § 3, subd. 30) authorizing the trustees to regulate the sale of goods by sample, by persons not residents of the village, and to license such persons so to sell, and to fix the amount to be paid for licenses, is unconstitutional, as being an unwarranted discrimination against nonresident citizens, and as in restraint of trade and tending to create monopolies.

4. SAME.
   The ordinance of the village of Norwich (Ordinance 7, § 1) prohibiting any nonresident of the village from selling goods by sample, etc., until he shall have received a license, the fee for which is $5 to $10 per day, is manifestly intended to levy a tax upon the business referred to, is not authorized by the charter of the village nor by its general powers, and is void.

Appeal from Chenango county court.

Edwin C. Jarvis was convicted of a misdemeanor, for violating a village ordinance. From a judgment of the county court affirming a judgment of a police justice, he appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, MER-
WIN, and PUTNAM, JJ.

F. N. Gilbert, for appellant.
Bixby & Browne, for the People.

PARKER, P. J.  The defendant is a resident of the city of Bing-
hamton, in this state, and is proceeded against for having, in violation
of an ordinance of the village of Norwich, peddled and sold goods from
house to house, and taken orders therefor, in that village.  It is con-
ceded that he had never taken out the required license.  The evidence
does not sustain the charge of peddling.  The statement of Mrs. Lucy
Peckham is evidently based upon hearsay, merely, and, as to every fact
testified to by her, should be rejected.  The case, therefore, depends
entirely upon the evidence of the other witness, Ida O'Neil.  From
that it appears that on July 23, 1896, defendant sold and delivered to
her three pounds of tea at her house in such village, and also took an
order from her for more tea, to be thereafter delivered.  It does not
appear that he had ever sold or offered to sell anything at any other
time or place in such village.  He was not, therefore, a peddler, within
the decision of Village of Stamford v. Fisher, 140 N. Y. 187, 35 N. E.
500.  Hence the only charge sustained against him is that he had sold
goods upon contract, and taken an order, at one house in the village,
without a license so to do.  And such is the situation assumed by the
respondent attorney on the argument of this case.  The ordinance
which it is claimed he violated, so far as it applies to this case, reads
substantially as follows:

"No person * * * not a resident of the village of Norwich, shall sell
goods, wares or merchandise by sample, or upon order, or by contract from
house to house, unless he shall have received a license so to sell, take orders
or make contracts.  Such license rates shall be as follows: Auctioneers, $15 to
$25 per day; peddlers, agents, canvassers and hawkers on the streets, $5 to
$10 per day; meat peddlers, $30 per year.  Any person violating this section
shall be guilty of a misdemeanor as provided by section 3 of title 3 of chapter
374 of the Laws of 1895."

It is manifest that the purpose and effect of this ordinance is to levy
a tax upon the business of selling goods by a nonresident within the
village of Norwich.  It is not merely a license required by way of reg-
ulating such business, in the interest of good order and the general
safety of society.  Although denominated a "license rate," the charge
is made by the day,—not $10 for every license issued, but $10 for every
day the business is carried on.  A license fee, properly so called, is
such a sum as will compensate for the expense of issuing and recording
the license, and, when the license is issued for the purpose of securing
police control over the matter licensed, such further sum as will prob-
ably be incurred in inspecting and regulating such business.  When
such a license may lawfully be issued, such a fee may lawfully be char-
ged; but in the case before us (without regard to the amount fixed)
the fact that the charge is made, not for the license issued, but by the
day, strongly indicates that the intent was to tax the business, and
not to obtain compensation merely for licensing the same.  But, when
we consider the amount fixed, such an intent becomes clearly appar-
ent.  Ten dollars per day is far beyond any sum which we can fancy

would be needed, either to compensate for issuing the license, or to meet any additional expense that the inspecting and regulating of such a business could possibly create. The article sold is perfectly harmless. The sale of it threatens neither the public health, morals, or safety, nor the good order of the community. No provision for public inspection of the same is made by the ordinance. Evidently none will be needed. No provision for rejecting any applicant is made. It seems that the license is to be issued to any one who will pay the charges. Plainly, the scheme is to raise money for revenue purposes, so far as any licenses are taken out, and to practically prohibit sales being made by nonresidents, to the advantage of those residing within the village and selling similar articles. Mayor, etc., v. Second Ave. R. Co., 32 N. Y. 261. It is a fundamental principle that the village, as a municipal corporation merely, has no inherent authority to require a license and impose either a fee or a tax upon any legitimate business. This is conceded, and the right to enact this ordinance is claimed from the provisions contained in subdivision 30, § 3, tit. 3, c. 374, Laws 1895, that being the act under which the village is incorporated. Unless, therefore, the ordinance can be sustained under the provisions of that act, it was unlawfully passed and is utterly void. Such provisions, so far as they affect this case, are substantially as follows: The board of trustees "are hereby authorized and empowered to regulate the sale of goods, wares and merchandise by samples, or upon order or by contracts by persons not residents of the village of Norwich, and to license such persons to sell such goods, wares and merchandise or take orders or make contracts for the same and fix the amount to be paid for such licenses." It is claimed that this remarkable provision is not a legitimate or constitutional exercise of legislative power; that it is not only an unwarranted discrimination against nonresident citizens, but that it is in restraint of trade, and tends to create monopolies. If such a provision were applied to and enforced in every incorporated village in this state, it is plain that it would so restrain the freedom to purchase and sell where one chooses that monopolies would be fostered in each village, and the business of the state greatly obstructed. And it is also difficult to see how such a restraint placed upon such a business can be sustained as legislation properly within the police power of the state; but without deciding or discussing that question, and assuming that the act in this respect is valid and operative, the ordinance in question must be held invalid because it attempts to go far beyond any authority which the charter assumes to give. It is a fundamental and well-settled principle of law that:

"When a municipal corporation is given the power to license useful trades and occupations, it cannot use the license as a tax to raise revenue, nor is it authorized to entirely prohibit the exercise of the trade or occupation by any excessive license fee."

Such is the rule as stated in 13 Am. & Eng. Enc. Law, p. 532, and it is fully sustained, not only by the cases there cited, but by most writers on the subject, and many decisions. 1 Dill. Mun. Corp. (4th Ed.) § 357, p. 424, says:

"Concerning useful trades and employments, a distinction is to be observed between the power to 'license' and the power to 'tax.' In such cases the former

right, unless such appears to have been the legislative intent, does not give the authority to prohibit, or to use the license as a mode of taxation with a view to revenue, but a reasonable fee for the license and the labor attending its issue may be charged."

Also, in Cooley, Tax'n, c. 19, p. 408, the same rule is laid down. And in discussing the terms which the statute should use to confer the power to tax he says:

"It is perhaps impossible to lay down any rule for the construction of such grants that shall be general, and at the same time safe; but, as all delegated powers to tax are to be closely scanned and strictly construed, it would seem that when a power to license is given the intendment must be that regulation is the object, unless there is something in the language of the grant, or in the circumstances under which it is made, indicating with sufficient certainty that the raising of revenue by means thereof was contemplated."

See, also, upon this subject, 2 Dill. Mun. Corp. §§ 768, 763; Dunham v. Trustees, 5 Cow. 462; City of Brooklyn v. Nodine, 26 Hun, 512.

In the statute before us the language used is, "to regulate" and "to license." As we have seen, these words of themselves do not confer the right to tax or prohibit, and, no other words being used, the intendment is that regulation, merely, was the object. As there is nothing in the language, so also there is nothing in the nature of the subject, or in the circumstances, that indicates an intent to confer upon the trustees the power to tax the business in question. The provision is found in a section of the act giving authority to regulate hawking, peddling, auctioneering, gift sales, lotteries, etc.,—subjects which are generally placed under the regulation of the police. In other parts of the act there are plain and specific provisions for levying all taxes within the village, and it would be a strained and unreasonable construction of the statute to conclude that anything more than a power to subject to police regulations was by this section intended to be conferred. "Such taxes are apt to be inequitable, and the principle not free from danger of great abuse. Hence ordinances of this character ought not to be sustained unless the authority be expressly or otherwise unequivocally conferred." 1 Dill. Mun. Corp. (4th Ed.) § 357, note. Concede that this statute gives authority to the board of trustees to subject to police regulation the business of selling goods by sample or upon order, within the village, it clearly gives them no authority to tax such business, or to substantially prohibit it. The scheme which the ordinance in question attempts to carry out is therefore not authorized by law. It is void, and the defendant should not have been held as a criminal for disregarding it. The judgment of conviction is erroneous, and should have been reversed.

Judgments of county court and of police justice reversed. All concur.

HERRICK, J. I concur for reversal. I do not think the legislature had power to authorize the village authorities to impose either a tax or license fee upon nonresidents to which residents were not also subject. The fundamental law knows no distinction between residents of different political subdivisions of the state, and, while different laws may be enacted for different localities in the state as their varying needs may require, yet those laws must not discriminate be-

tween persons lawfully within their jurisdiction; for every resident of the state is entitled to the equal protection of equal laws, and is entitled to go to and fro, and buy, sell, and labor, in any and every part of the state, upon the same terms and conditions—no more, no less— that are imposed upon residents of that particular portion of the state where he chooses to exercise his rights; and any imposition of an additional burden upon him, as a condition of exercising his rights, is depriving him of the equal protection of equal laws, and is contrary to the law of the land.