GARBUTT *v.* STATE.

[77 South. 189, Division B.]

1. COMMERCE. *Interstate commerce. Employment agencies. Licenses.*

Laws 1912, chapter 94, requiring employment agencies hiring laborers to go out of the state, to pay a license fee of five hun-

dred dollars in every county in which they operate, is neither a burden or tax on interstate commerce.

2. SAME.

This act, does not undertake to tax one who solicits or hires laborers for his own use or employment, but the tax is laid upon the person doing a regular business of emigrant or employment agent.

3. SAME.

Such license is not prohibitory.

4. SAME.

The amount of a license tax is primarily a legislative question.

APPEAL from the circuit court of Stone county.

HON. JAMES NEVILLE, Judge.

W. H. Garbutt was convicted of violation of chapter 94, Laws 1912, and appeals.

The facts are fully stated in the opinion of the court.

*Mize & Mize,* for appellants.

We submit that said act under which appellant was arrested is in violation of the Constitution of the United States and acts of Congress, and that a peremptory instruction should therefore have been given the defendant.

Chapter 94, Acts of 1912, provides that each emigrant or employment agent, or person engaged in hiring laborers or soliciting emigrants or laborers to go beyond the limits of the state, must pay an annual license of five hundred dollars in every county where he operates or solicits emigrants or laborers to go beyond the limits of the state, must pay an annual license of five hundred dollars in every county where he operates or solicits emigrants or laborers, to be paid into the state or treasury.

This statute is manifestly unconstitutional in that it imposes a tax on interstate commerce. The carrying of persons or providing for the carrying of persons from one state to another is interstate commerce. No state can

impose a tax on the transportation of persons or goods by interstate railways or other lines of interstate travel, or upon the occupation or business of carrying on interstate commerce or the offices or agencies of railways and other companies engaged in it. Black's Constitutional Law, p. 246.

The business of an agent, being to solicit passenger traffic out of California into and through other states to New York is a part of interstate commerce, which cannot be restricted or taxed by law. *McCall* v. *Proxee of Cal.*, 136 U. S. 104, 34 Law Ed. 391. We see no difference between this California case and the instant case.

The absence of legislation by Congress will not give a state power to regulate or tax or to impose any other restriction upon the transmission of property or telegraphic messages from one state to another. *Wabash, etc., Ry.* v. *Illinois*, U. S. Sup. Ct. Rep. 30 Law Ed. 244.

A state statute imposing a capitation tax on every person leaving a state by any railroad or stage coach, to be paid by the railroad companies and stage coach proprietors is invalid, as infringing the rights of citizens of the United States to pass and re-pass through every part of the country. *Crandall* v. *Nevada*, 6 Wall. 835 U. S. Supreme Ct. Rep., 18 Law Ed. 745.

It makes no difference as to the validity of a tax on interstate commerce whether the commerce is carried on by an individual or a corporation. *Gloucester Ferry Co.* v. *Penn*, U. S. Sup. Ct. Rep., 29 Law Ed. 158. A state law which requires a party to take out a license for the carrying on of interstate commerce is unconstitutional and void. *Crutcher* v. *Kentucky*, U. S. Sup. Ct. Rep., 35 Law Ed. 649.

When a law of a state imposes a license tax on boats under such circumstances and with such effect as to constitute a regulation of commerce, either foreign or interstate, it is void on that account. *Moran* v. *New Orleans*,

U. S. Sup. Ct., 28 Law Ed. 653. A state is without authority to impose a tax or other restriction upon the transmission of persons or property or telegraphic messages from one state to another. U. S. Sup. Ct. Rep., 30 Law Ed. 244. The right to solicit or take orders for interstate business is part of interstate commerce and not subject to state regulation. *Vance* v. *Vandercook Co.,* U. S. Sup. Ct. Rep. 42 Law Ed. 1100.

The several states may not lay any restrictions upon immigration. It is not within the power of any state to impose taxes on such immigration or upon the masters of or owners of vessels bringing foreigners into their ports, for the privilege of so doing, or upon the aliens themselves. Such a tax would be an unlawful regulation of foreign commerce. Black on Constitutional Law (3 Ed.), Hornbook Series, p. 228; U. S. Sup. Ct. Rep. 12 Law Ed. 702. A license cannot be required by a state of an agent whose business is to solicit passenger traffic for an interstate carrier. U. S. Sup. Ct. Rep., 34 Law. Ed. 391.

The court will see, from the above authorities, that the transportation of persons from one state to another is as much interstate commerce as the transportation of commodities or other property, and a reading of said authorities will show that it is wholly beyond the power of a state to pass a law requiring license from any person desiring to carry on such business. This statute plainly imposes a tax on the business of a person engaged in interstate commerce.

Furthermore we submit that said statute is absolutely void because the license fixed is unreasonable, a privilege tax must be reasonable. *Joseph* v. *Randolph,* 46 Am. St. Rep. 347, 71 Ala. 499.

In the face of this decision we cannot see how the court can escape the conclusion that the act under which appellant was tried is unconstitutional and void. This decision is authority for both of our contentions: (1) it is a tax on interstate commerce, and (2) the amount of license required is prohibitory.

*Earl Floyd,* assistant attorney-general, for the state.

The appellant contends that the said act is unconstitutional for the double reason that it constitutes an interference with interstate commerce, and also that the tax of five hundred dollars is prohibitory and void. In support of his contention he cites several cases touching only indirectly on the question involved, and, therefore, I will not burden the court in pointing out the obvious inapplicability of the various decisions cited by him, but will rest the state's case on a few decisions absolutely pertinent to the issue involved.

In the case of *Williams* v. *Fears,* 179 U. S. 270, 45 L. Ed. 199 (1900). affirming 110 Ga. 584, 35 S. E. 699, 50 L. R. A. 685 (1900), a similar statute of the state of Georgia imposing a license tax on emigrant agents engaged in the business of hiring persons to labor outside of the state was held not to be a burden on interstate commerce. The above case was followed under like conditions in *State* v. *Napier.* 63 S. C. 60. 41 S. E. 10 (1902): *State* v. *Hunt,* 129 N. C. 686, 40 S. E. 216, 85 Am. St. Rep. 758, 1901. While in the case of *Williams* v. *Fears, supra,* the question of the tax being prohibitory was not presented, yet FULLER. C. J., seized the occasion to anticipate such an attack by saying:

"The amount of the tax imposed on occupations varies with the character of the occupation. Dealers in futures are compelled to pay one thousand dollars annually for each county in which the business is carried on; circus

companies exhibiting in cities or towns of twenty thousand inhabitants or more, one hundred dollars each day of exhibition; peddlers of cooking stoves or ranges, two hundred dollars in every county in which such peddlers may do business; peddlers of clocks, one hundred dollars; and so on.

The general legislative policy is plain and the intention to prohibit this particular business cannot properly be imputed from the amount of the tax payable by those embarked in it, even if we were at liberty on this record to go into that subject.

While in the face of the above decisions upholding such laws I do not feel it necessary to add anything in justification of the legislative policy adopted by this state, yet I commend to the court the decision of Judge NETERER in the case of *Wiseman* v. *Tanner,* 221 Fed. Rep. 694, wherein the evils of the unregulated practice of labor agents are admirably set forth.

This case arose on the validity of an initiative act of the state of Washington, adopted by the electors of the state November 3, 1914, which declares that it has as its object the correction of a practice which results frequently in laborers becoming victims of imposition and extortion.

The appellant relies on the case of *McCall* v. *Cal.,* 36 U. S. 104, 34 L. Ed. 391, but inasmuch as this case and others cited by the appellant are referred to and distinguished in the case of *Williams* v. *Fears, supra,* I deem it useless to add anything to what the court has already said.

The case of *Joseph* v. *Randolph,* 71 Ala. 499, 46 Am. Rep. 347, 1882, held invalid a license tax imposed for inducing laborers to leave the state, but the principle laid down in that case has been unequivocally repudiated in the cases cited above, decided eighteen or twenty years thereafter.

STEVENS, J., delivered the opinion of the court.

Appellant was convicted for the violation of chapter 94, Laws of 1912, which requires each labor agent or employment agent, engaged in the business of soliciting or hiring laborers to go beyond the limits of the state, to pay an annual license tax of five hundred dollars for each county in which such agent operates. From the judgment convicting the defendant, and imposing a fine of five hundred dollars, appellant appeals.

The appeal challenges the constitutionality of the act imposing the license tax. The statute reads:

"Section 1. Be it enacted by the legislature of the state of Mississippi, that each emigrant or employment agent, or person engaged in hiring laborers, or soliciting emigrants or laborers in this state to go beyond the limits of the state, must pay an annual license of five hundred dollars ($500) in every county in which he operates or solicits emigrants or laborers, which amount must be paid into the state treasury for the use of the state.

"Sec. 2. Any person doing the business of emigrant or employment agent without having first obtained a license, as required by law, shall be guilty of a misdemeanor, and upon conviction, shall be punished by fine of not less than five hundred dollars ($500) and not more than five thousand dollars ($5,000), or may be imprisoned in the county jail, or sentenced to hard labor for the county for not less than one month nor more than six months, within the discretion of the court.

"Sec. 3. That this act take effect and be in force from and after its passage."

On the contention of counsel that appellant was entitled to and was refused a peremptory instruction, the argument is directed to three points: First, that the tax imposed is a tax and burden on interstate commerce in violation of the federal Constitution; secondly, that the amount of license required is prohibitory; thirdly, that venue was not proved.

The contention that this law burdens or is a tax on interstate commerce is settled against appellant by the

following authorities: *Williams* v. *Fears,* 179 U. S. 270, 21 Sup. Ct. 128, 45 L. Ed. 186, affirming 110 Ga. 584, 35 S. E. 699, 50 L. R. A. 685; *State* v. *Napier,* 63 S. C. 60, 41 S. E. 13; *State* v. *Hunt,* 129 N. C. 686, 40 S. E. 216, 85 Am. St. Rep. 758, with case note. The act, as we construe it, does not undertake to tax one who solicits or hires laborers for his own use or employment, the employer seeking labor for himself; the tax is laid upon the person doing a regular business of emigrant or employment agent. The title of the act makes this clear as does also the general language in the body of the statute, especially section 2, stating:

"Any person doing the business of emigrant or employment agent," etc.

In view of the activity of labor agents in Mississippi within the past few years, and the free emigration of laborers to other states, especially the heavy transportation of colored laborers to the Northern states—amounting the past year to a veritable "exodus"—we are not prepared to declare the tax prohibitory. The amount of the tax is primarily a legislative question.

The venue was in fact sufficiently proven.

*Affirmed.*