Frank X. Schwab, Appellant, *v.* Ross Graves, as Councilman and Commissioner of Finance and Accounts of the City of Buffalo, and Others, Respondents.

Fourth Department, June 28, 1927.

**Municipal corporations — contracts — permit granted by town of Cheektowaga to city of Buffalo to erect garbage disposal plant — said permit not consideration for obligations assumed by city and for release by city of obligation of town to it.**

The action of the town board of the town of Cheektowaga in granting permission to the city of Buffalo to erect and operate a garbage disposal plant in the town was a governmental legislative act of a regulatory nature and does not constitute a valid consideration for the obligations assumed by the city and for the release of a contract obligation of the town to the city.

Appeal by the plaintiff, Frank X. Schwab, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Erie on the 13th day of July, 1925, upon the decision of the court rendered after a trial at the Erie Special Term.

*George P. Keating,* for the appellant.

*Frederic C. Rupp, Corporation Counsel,* for the respondent City of Buffalo.

*William Brennan, Jr.,* for the respondent Town of Cheektowaga.

Sears, J. There is but one feature of the judgment from which this appeal is taken which is now questioned. The court below

has adjudged a certain contract between the city of Buffalo and the town of Cheektowaga to be valid. The plaintiff urges that the learned trial court erred in this determination. The city of Buffalo now joins with the plaintiff in asking a reversal of this provision of the judgment. All the parties to the proceeding who have appealed, disregarding the purpose for which the action was originally brought, desire a determination as to the validity of the contract.

The city of Buffalo wishing to establish a plant for the disposal by burning of garbage and refuse collected in the city, negotiated for the purchase of a site in the town of Cheektowaga which town adjoins the city on the east. There was then in force an ordinance of the town of Cheektowaga, the material part of which is as follows: `` No person, firm or corporation shall hereafter erect, locate, build, re-build, alter, remodel, use or permit the use of any building or structure on any premises within the limits of the town of Cheektowaga as a factory  *  *  *  incinerator  *  *  * or slaughter house, without the consent of the town board, such consent to be evidenced by a resolution adopted by the affirmative vote of a majority of all members of the town board, and thereafter by a permit issued by the town clerk, which said permit in every case where it is proposed to use the premises in question for any  *  *  * incinerating  *  *  * plant  *  *  * shall expressly provide that the said permit shall be revocable at the pleasure of the town board.''

There were also subsisting three contracts between the city of Buffalo and the town of Cheektowaga by the provisions of which the town of Cheektowaga was permitted to use the sewers of the city of Buffalo for the disposal of sewage of the town of Cheektowaga, for which privilege the town of Cheektowaga had contracted to pay the city a large sum, aggregating more than $80,000. While negotiations for the purchase of the site in the town of Cheektowaga for the erection of an incinerator plant were in progress, the city also entered into negotiations with the town of Cheektowaga for an approval of its plan to establish such incinerator within the limits of the town. These negotiations between the city and the town resulted in the contract before us. The contract after reciting that the city was about to enter into a written contract for the purchase of certain premises in the town of Cheektowaga for the purpose of constructing and maintaining thereon a garbage disposal plant, and that the town was agreeable to such location of a garbage disposal plant of a type to be approved by the town, provided, in substance, that the city of Buffalo might erect on such site a plant for the disposal of garbage of a type to be approved as in the contract set forth, which plant should be

modern, sanitary and odorless; but that before the permission granted to the city under the contract for the erection and maintenance of the disposal plant should become operative, a complete set of the plans and specifications for the erection and maintenance of such plant, showing in detail the method to be used in the operation of said plant, duly certified by the commissioner of public works, be submitted to the town for its examination and approval, and if said plans and specifications or method should be disapproved by such town, or if said plans, specifications and method of operation should not be submitted to said town by said city, then this agreement should become null and void, and not binding upon the town, and that the town should do nothing to hinder the erection or maintenance under the conditions and restrictions in the contract expressed of a plant of the type therein specified, namely, a modern, sanitary, odorless plant. The contract contained provisions as to the manner of the conveyance of garbage to the plant, forbidding the use of the site for keeping swine, requiring the city to operate the plant in a proper, careful and sanitary manner without causing a public or private nuisance, requiring the permanent discontinuance and dismanteling of a rendering plant then existing upon the premises, requiring the city to accept for disposal, without charge, public garbage which should originate in the town, requiring the city to permit the town and the village of Sloan, which is situate in the town, to continue the existing use of the city sewers, and also to make a new connection with the city's sewers. The contract also contained this clause, " that the city shall and does hereby release the said town and the village of Sloan from further payment of sewer rental under existing contracts for the privilege of discharging the effluent from the sewerage systems of said town and village into the sewers of the city, in the manner now permitted under said contracts from and after the date of the completion of the purchase by the city of said site." The city filed its plans for the disposal plant with the town board of Cheektowaga in accordance with the contract; they were approved and a permit for the construction of the incinerator plant in accordance with the plans and specifications and under the terms of the contract between the city and town was issued to the city by the town clerk.

The attack upon this contract is based upon the proposition that the consent of the town of Cheektowaga to the construction and operation of the disposal plant is not a valid consideration for the obligations assumed by the city and for the release of the indebtedness owing from the town of Cheektowaga to the city of Buffalo under the previously existing contracts.

The town board in granting the permit and in imposing terms

and conditions for the exercise of its right, was not acting in a private capacity. It was not dealing with property of the town. It was acting under its police power. It was contracting, or attempting to contract, in so far as these matters are concerned, in a legislative capacity for the welfare, health, comfort and security of its inhabitants. In respect to subjects coming within its legislative power for such purposes, it had nothing to sell. Its sole power was to regulate. (*City of New York* v. *Second Ave. R. R. Co.*, 32 N. Y. 261; *City of Buffalo* v. *Stevenson*, 207 id. 258; *People* v. *Jarvis*, 19 App. Div. 466.) It could not limit its further action along the same lines whatever permit it granted. (*American Rapid Telegraph Co.* v. *Hess*, 125 N. Y. 641.) The police power is not subject to limitation by private contract. (*Beer Co.* v. *Massachusetts*, 97 U. S. 25; *Metropolitan Board of Excise* v. *Barrie*, 34 N. Y. 657; *Northern Pacific R. Co.* v. *Duluth*, 208 U. S. 583; *People ex rel. N. Y. El. Lines Co.* v. *Ellison*, 188 N. Y. 523.)

The action of the town, therefore, was a governmental legislative act of a regulatory nature and does not constitute a valid consideration for a release of a contract obligation of the town.

The judgment in so far as it adjudges the contract to be valid should be reversed, with costs to the appellant, and judgment directed for the plaintiff adjudging the contract invalid, without costs to any party.

All concur. Present — HUBBS, P. J., CLARK, SEARS, CROUCH and TAYLOR, JJ.

Judgment in so far as it determines the validity of the contract between the city of Buffalo and town of Cheektowaga reversed on the law, certain conclusions of law disapproved and new conclusions made and judgment directed in accordance with the opinion, without costs of this appeal to either party.