FRED G. SMART, Plaintiff, *v.* CITY OF ALBANY and Others, Defendants.

Supreme Court, Albany County, August, 1932.

*Dugan & Bookstein [Avrom M. Jacobs of counsel], for the plaintiff.*

*George A. Reilly, for the defendant City of Albany.*

*O'Connell & Aronowitz [Samuel E. Aronowitz and George Myers of counsel], amici curiæ.*

STALEY, J.   This is an action brought against the city of Albany and various officers thereof to have declared void two ordinances of

the city for the licensing of coal dealers, and to perpetually and during the pendency of this action restrain the enforcement thereof. The claim is made that the ordinances deprive plaintiff, a coal dealer, of property without due process of law; that they are discriminatory; that they abridge the privileges and immunities of the plaintiff as a citizen of the United States; and that they, in effect, prohibit plaintiff and others from engaging in a lawful business.

The ordinance adopted May 2, 1932, makes it unlawful for any person to engage in the retail sale or distribution of coal or coke within the limits of the city of Albany without first obtaining a license. A " retail seller " is defined in the ordinance as one who sells coal or coke in lots of not less than 100 pounds, or one who purchases in carload lots and resells and distributes the same to employees, friends, relatives or others. The ordinance also provides that an application for the license shall be made in writing and that license plates to be issued shall be publicly displayed. The license fee is fixed at $250, but may be renewed upon payment of the sum of $150. It is further provided that the license may be revoked for false statements in the application, or for violations of the laws of the State of New York in relation to the sale of coal, coke, wood, etc. Violations of the ordinance constitute a misdemeanor.

The ordinance adopted May 2, 1932, was amended by an ordinance adopted July 18, 1932. The amendments are not material here.

The plaintiff, upon the summons, complaint and affidavits, procured an order to show cause why an injunction *pendente lite* should not be granted. The questions here presented arise on an application for such an injunction.

It is claimed on the part of the defendants that, in the distribution of coal and coke, there are great opportunities for fraud, as the purchaser has no means of determining the quantity of the fuel sold to him, and moreover, the quality may be extremely poor without the customer being able to discover it. Complaint is made that in the winter many irresponsible peddlers profess to sell coal in small lots and at lower prices than can be obtained from legitimate dealers; whereas, such coal is of inferior quality and lots are underweight so that the purchaser is in realty being defrauded.

It is also claimed that detection of fraud is made particularly difficult because no signs appear upon the vehicles of these peddlers.

There appear to be between forty and fifty coal dealers in the city of Albany. Under this ordinance there would be an income to the city for the first year of $12,500, and for the succeeding years $7,500 at the maximum, from the licenses.

It is stated that in 1931 the coal dealers' association appointed and paid a representative whose duty it was to investigate frauds in

the coal business, but that his employment has been discontinued. It is proposed to attach additional deputies to the office of the sealer of weights and measures for the purpose of enforcing the ordinance.

The plaintiff claims that a license fee of $250 for the first year and $150 for succeeding years is, in effect, prohibitive; that the purpose of the ordinance is to get rid of the small dealer and thus lessen competition with the large dealer; that the license fee is, in reality, a tax; and that the proceeds from the license fees are much larger than are necessary to enforce the ordinance.

Plaintiff further claims that the frauds alleged are greatly exaggerated; that it appears from the report of the sealer of weights and measures that the conditions in relation to dealers in coal were good for the year 1931; and that the sealer of weights and measures reported for that year that he had a man reweighing coal wagons, and that conditions in this line were excellent.

It also appears from the affidavits submitted on the part of the defendants that the statements in relation to the peddlers are made largely on information and belief, and there is no evidence of specific cases of this kind.

In respect to the propriety of regulating the coal business, the decision of the common council must control. It may be reasonably claimed that the public is defrauded in connection with this business and that regulation is desirable. All presumptions are in favor of the validity of the ordinance in this respect.

Regulations respecting lawful trades or occupations are of frequent occurrence in the various cities of the country. To what business or occupation they may apply is a legislative question, not a question for the courts. Unless regulations are so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of citizens are unnecessarily and arbitrarily interfered with, they are not beyond the power of the State, and do not offend the Federal Constitution. (*Gundling* v. *Chicago*, 177 U. S. 183; 20 S. Ct. 633; 44 L. Ed. 725.)

The main objection to the ordinance is the license fee of $250 for the first year and $150 for succeeding years.

Is this license fee unreasonable, arbitrary and prohibitive?

A license fee may be a tax or an imposition in exercise of the police power. (*Village of Ballston Spa* v. *Markham*, 58 Hun, 238; *City of Brooklyn* v. *Nodine*, 26 id. 512.)

Where the fee is, in effect, an excise or occupational tax, there must be equality and uniformity within the same class. (*Metropolis Theater Co.* v. *City of Chicago*, 228 U. S. 61; 33 S. Ct. 441; 57 L. Ed. 730; *Gundling* v. *Chicago*, 177 U. S. 183; 20 S. Ct. 633; 44 L. Ed. 725.) And where the license fee is thus imposed for revenue pur-

poses, the amount is usually a question for the Legislature and not for the courts. (*Alaska Fish Salting & By-Products Co.* v. *Smith,* 255 U. S. 44; 41 S. Ct. 219; 65 L. Ed. 489; *St. Louis Poster Advertising Co.* v. *City of St. Louis,* 249 U. S. 269; 39 S. Ct. 274; 63 L. Ed. 599; *Garbutt* v. *State,* 116 Miss. 424; 77 So. 189; *Stull* v. *DeMattos,* 23 Wash. 71; 62 P. 451.)

On the other hand, where the license fee is imposed in the exercise of the police power, it must be such a fee only as will legitimately assist in regulation of the business or occupation, and it should not exceed necessary or probable expense of issuing the license and of inspecting and regulating the business which it covers. (*Ward* v. *Maryland,* 12 Wall. 418; 20 L. Ed. 449; *City of Jacksonville* v. *Ledwith,* 26 Fla. 163; 7 So..885; *City of Ottumwa* v. *Zekind,* 95 Iowa, 622; 64 N. W. 646; *State* v. *Angelo,* 71 N. H. 224; 51 A. 905; *Woodruff* v. *McGrath,* 32 N. Y. 255; *People* v. *Jarvis,* 19 App. Div. 466.)

Of course, a reasonable variation is not fatal to the ordinance. (*City of Mayfield* v. *Carter Hardware Co.,* 192 Ky. 381; 233 S. W. 789.)

There is no claim here that the license fee is imposed as an excise tax.

While the State has power to impose such a tax, it has not authorized any such in the present instance as far as appears. (*People ex rel. Hatch* v. *Reardon,* 184 N. Y. 431.)

The validity of the ordinance in question, therefore, depends upon whether or not it is a valid exercise of the police power.

The Second Class Cities Law, section 30, provides: " The legislative power of the city is vested in the common council thereof, and it has authority to enact ordinances, not inconsistent with law, for the government of the city and the management of its business, for the preservation of good order, peace and health, for the safety and welfare of its inhabitants and the protection and security of their property; and its authority, except as otherwise provided in this chapter, or by law, is legislative only."

No specific grant of power to license has been called to my attention. (General City Law, § 20, subd. 13.) In the absence of such an authorization it is doubtful whether a license fee may be imposed by a municipality as the Legislature has entered the field of regulation of sales of coal and coke. (Agriculture & Markets Law, §§ 222–228, 32–45; Dillon Mun. Corp. [5th ed.] § 667; *Dunham* v. *Trustees of Village of Rochester,* 5 Cow. 462; *Greater New York Athletic Club* v. *Wurster,* 19 Misc. 443.)

Aside from this question the license fee seems to be unreasonable. The test of reasonableness depends upon all the circumstances. Where a license fee is imposed on a useful and inoffensive trade or

occupation, the ability to pay must be considered. As a tax on a small business, the amount demanded would be large; as a license fee, it is unreasonable.

In determining the reasonableness or unreasonableness of license fees, the general trend of judicial opinion is instructive, although each case depends largely upon its particular facts. For example, the following license fees have been held excessive: $100 per month on itinerant vendors of patent medicines (*People* v. *Wilson*, 249 Ill. 195; 94 N. E. 141); $300 upon transient merchants, regardless of the amount of goods sold or the time during which the business was carried on (*Uhrlaub* v. *Cincinnati*, 28 Ohio Cir. Ct. 797); $200 per month on transient merchants (*City of Peoria* v. *Gugenheim*, 61 Ill. App. 374); $5 to $10 and in some instances $25 and $15 per day for peddlers (*Brooks* v. *Mangan*, 86 Mich. 576; 49 N. W. 633); $250 per month or $25 per day on transient merchants (*City of Ottumwa* v. *Zekind*, 95 Iowa, 622; 64 N. W. 646); $10 per month for peddlers (*State* v. *Angelo*, 71 N. H. 224; 51 A. 905); $10 per barrel for kerosene (*State ex rel. Brewster* v. *Cumiskey*, 97 Kan. 343; 155 P. 47); $300 for reselling theatre tickets (*Matter of Dees*, 50 Cal. App. 11; 194 P. 717); $250 per year for bill posters; $50 for a coal oil wagon (*Waters - Pierce Oil Co.* v. *City of Hot Springs*, 85 Ark. 509; 109 S. W. 293); $25 per day on auctioneers (*Village of Minneota* v. *Martin*, 124 Minn. 498; 145 N. W. 383); $300 per year for an auctioneer (*City of Mankato* v. *Fowler*, 32 Minn. 364; 20 N. W. 361); $15 to $20 and $5 to $10 per day for peddlers, etc. (*People* v. *Jarvis*, 19 App. Div. 466).

And the following have been held to be reasonable: $25 for the first taxicab and $10 for each additional one per year (*Melconian* v. *City of Grand Rapids*, 218 Mich. 397; 188 N. W. 521); $200 per annum for a butcher (*City of St. Paul* v. *Colter*, 12 Minn. 41 [Gil. 16]; 90 Am. Dec. 278); $50 per annum for butchers (*Trigg* v. *Dixon*, 96 Ark. 199; 131 S. W. 695); $5 per month for a market stall (*City of Jacksonville* v. *Ledwith*, 26 Fla. 163; 7 So. 885); $7 for an automobile (*City of Mayfield* v. *Carter Hardware Co.*, 192 Ky. 381; 233 S. W. 789); $500 for theatre (*Wallack* v. *Mayor, etc., of N. Y. City*, 3 Hun, 84, but this could be sustained as a tax); $100 on peddlers (*City of Duluth* v. *Krupp*, 46 Minn. 435; 49 N. W. 235); $300 for junk dealers (*Melnick* v. *City of Atlanta*, 147 Ga. 525; 94 S. E. 1015, but this could be sustained as a tax); $30 per mile for gas pipes of a company having 120 miles of pipes, reduced to $7.50, the actual cost of inspection (*Petition of Penn. Gas Co.*, 258 Penn. St. 234; 101 A. 996).

The general trend condemns the license fee in question.

There is one provision of the ordinance that appears to me to be

particularly unnecessary and arbitrary. Section 2 defines a " retail seller " as one who purchases in carload lots coal or coke and resells or distributes the same to employees, friends, relatives and others.

A person who buys a carload of coal is put in the same category as a person engaged in the business of a coal dealer.

There should be a reasonable relation between the ordinance and its purpose. (*City of Chicago* v. *Netcher*, 183 Ill. 104; 55 N. E. 707.)

In the instance of a person, not in the coal business, who buys one or more carloads of coal for distribution to his friends, relatives or employees, there is an absence of all the evils which the ordinance is designed to prevent. There is a vast difference between a casual distributor of coal and one engaged in the business. To prevent by a license a citizen from buying a carload of coal, where he is not in the coal business, and distributing it to his friends, is so unreasonable and arbitrary as to condemn the provision therefor without further argument.

An injunction may issue during the pendency of the action, and order may be entered accordingly, without costs.