# GUNDLING *v.* CHICAGO.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 209.   Argued March 22, 1900.—Decided April 9, 1900.

The ordinance of the city of Chicago, authorizing the issue of a license to persons to sell cigarettes upon payment of one hundred dollars, and forbidding their sale without license, is no violation of the Federal Constitution, and the amount of the tax named for the license is within the power of the State to fix.

THE case is stated in the opinion.

*Mr. Lee D. Mathias* for plaintiff in error.   *Mr. Charles H. Aldrich* was on his brief.

*Mr. Frederic D. McKenney* for defendant in error.   *Mr. Charles M. Walker* and *Mr. Henry Schofield* were on his brief.

MR. JUSTICE PECKHAM delivered the opinion of the court.

The plaintiff in error was convicted in a police court of the city of Chicago of a violation of an ordinance of that city forbidding the sale of cigarettes by any person without a license, and was fined fifty dollars. From the judgment of conviction he appealed to the Criminal Court of Cook County, where it was affirmed, and thence to the Supreme Court of the State, where it was again affirmed, and he now brings the case here on writ of error.

Sections 1, 2 and 8 of the ordinance referred to read as follows:

"SEC. 1. The mayor of the city of Chicago shall from time to time grant licenses authorizing the sale of cigarettes within the city of Chicago, in the manner following and not otherwise.

"Any person, firm or corporation desiring a license to sell cigarettes shall make written application for that purpose to

the commissioner of health, in which shall be described the location at which such sales are proposed to be made. Said application shall be accompanied by evidence that the applicant, if a single individual, all the members of the firm if a co-partnership, and person or persons in charge of the business, if a corporation, is or are persons of good character and reputation. The commissioner of health shall thereupon submit to the mayor the said application with the evidence aforesaid, with his opinion as to the propriety of granting such license, and if the mayor shall be satisfied that the persons before mentioned are of good character and reputation and are suitable persons to be entrusted with the sale of cigarettes, he shall issue a license in accordance with such application, upon such applicant filing a bond payable to the city of Chicago, with at least two sureties, to be approved by the mayor, in the sum of $500, conditioned that the licensed person, firm or corporation shall faithfully observe and obey all laws of the State of Illinois and ordinances of the city of Chicago now in force or which may hereafter be passed, with reference to cigarettes; provided, however, that nothing herein contained shall be held to authorize the sale of cigarettes containing opium, morphine, jimson weed, belladonna, glycerine or sugar.

"Sec. 2. Every person, on compliance with the aforesaid requirements and the payment in advance to the city collector, at the rate of $100 per annum, shall receive a license under the corporate seal, signed by the mayor and countersigned by the clerk, which shall authorize the person, firm or corporation therein named to expose for sale, sell or offer for sale cigarettes at the place designated in the license; provided, that no license shall be granted to sell within 200 feet of a school house.

"Sec. 8. Any person who shall hereafter have or keep for sale or expose for sale or offer to sell any cigarettes at any place within the city of Chicago without having first procured the license provided shall be fined not less than fifty dollars and not exceeding two hundred dollars for every violation of this ordinance, and a further penalty of $25 for each and every day the person, firm or corporation persists in such violation after a conviction for the first offence."

The other sections are not material to this inquiry.

The plaintiff in error made no application to the health commissioner to obtain a license from the mayor in accordance with the above mentioned ordinance. He specially set up in the courts below that the ordinance was invalid, because in violation of the Fourteenth Amendment as depriving him of his property without due process of law. He contended in the state courts that the common council of the city of Chicago had no right to pass the ordinance in question, because no such power was given to it under the general act of the State of Illinois which incorporated the city of Chicago. The Supreme Court of the State, however, in construing that act decided that it did authorize the city to pass the ordinance, and the plaintiff in error admits that this decision is conclusive upon us as the decision of a question of local law by the highest court of the State.

He makes two claims here upon which he bases the statement that the ordinance violates his rights under the Fourteenth Amendment of the Federal Constitution. Quoting from counsel's brief, these claims are "*First,* that the State itself, acting through the common council of the city of Chicago, is inhibited by the Federal Constitution from making those provisions in the ordinance which delegate to the mayor the entire subject of granting and revoking licenses to persons engaged in the business of selling cigarettes; *second,* that the ordinance is unconstitutional and void as being an unreasonable exercise of the police power by imposing a license fee of $100, a sum manifestly greater than the expense of issuing the license and providing for the regulation, thereby depriving persons of their liberty and property by an interference with their rights which is neither necessary to the protection of others nor the public health."

He contends that the ordinance vests arbitrary power in the mayor to grant or refuse a license to sell cigarettes, and that such arbitrary power is a violation of the amendment in question.

He claims also that he has been denied the equal protection of the laws, because in other kinds of business, where licenses are granted to persons engaged in any trade or occupation, no

member thereof is "singled out and subjected to the absolute supervision of an irresponsible magistrate while his neighbor is protected in his right by the customary safeguards of the law."

It seems somewhat doubtful whether the plaintiff in error is in a position to raise the question of the invalidity of the ordinance because of the alleged arbitrary power of the mayor to grant or refuse it. He made no application for a license, and of course the mayor has not refused it. *Non constat*, that he would have refused it if application had been made by the plaintiff in error. Whether the discretion of the mayor is arbitrary or not would seem to be unimportant to the plaintiff in error so long as he made no application for the exercise of that discretion in his favor and was not refused a license.

But assuming that the question may be raised by him, we think the ordinance in question does not violate the Fourteenth Amendment, either in regard to the clause requiring due process of law, or in that providing for the equal protection of the laws.

The case principally relied upon by the plaintiff in error is that of *Yick Wo* v. *Hopkins*, 118 U. S. 356, relating to the regulation of laundries in the city of San Francisco. The ordinance in question in that case was held to be illegal and in violation of the Fourteenth Amendment, because, with reference to the subject upon which it touched, it conferred upon the municipal authorities arbitrary power, at their will and without regard to discretion in the legal sense of the term, to give or withhold consent as to persons or places for carrying on a laundry, with reference to the competency of the persons applying or the propriety of the place selected. It was also held that there was a clear and intentional discrimination made against the Chinese in the operation of the ordinance, which discrimination was founded upon the difference of race, and was wholly arbitrary and unjust. It appeared that both petitioners, who were engaged in the laundry business, were Chinese and had complied with every requisite deemed by the law, or by the public officers charged with its administration, necessary for the protection of neighboring property from fire or as a protection against injury to

the public health, and yet the supervisors, for no reason other than discrimination against the Chinese, refused to grant the licenses to the petitioners and to some two hundred other Chinese subjects, while granting them to eighty people who were not such subjects and were working under precisely the same conditions. Such an ordinance, so executed, was held void by this court. Speaking in that case of the general right to grant licenses in regard to occupations or trades, Mr. Justice Matthews, in delivering the opinion of the court, said:

"The ordinance, therefore, also differs from the not unusual case, where discretion is lodged by law in public officers or bodies to grant or withhold licenses to keep taverns, or places for the sale of spirituous liquors, and the like, when one of the conditions is that the applicant shall be a fit person for the exercise of the privilege, because in such cases the fact of fitness is submitted to the judgment of the officer, and calls for the exercise of a discretion of a judicial nature."

The ordinance in question here does not grant to the mayor arbitrary power such as is described in the above mentioned laundry case, but the provision is similar to that mentioned in the foregoing extract from the opinion in that case. In the case at bar, the license is to be issued if the mayor is satisfied that the person applying is of good character and reputation and a suitable person to be entrusted with the sale of cigarettes, provided such applicant will file a bond as stated in the ordinance as a security that he will faithfully observe and obey the laws of the State and the ordinances of the city with reference to cigarettes. The mayor is bound to grant a license to every person fulfilling these conditions, and thus the fact of fitness is submitted to the judgment of the officer, and it calls for the exercise of a discretion of a judicial nature by him. There is no proof nor charge in the record that there has been any discrimination against individuals applying for a license or any abuse of discretion on the part of the mayor. Whether dealing in and selling cigarettes is that kind of a business which ought to be licensed is, we think, considering the character of the article to be sold, a question for the State, and through it for the city to determine for itself, and that an ordinance providing

reasonable conditions upon the performance of which a license may be granted to sell such article does not violate any provision of the Federal Constitution.

Regulations respecting the pursuit of a lawful trade or business are of very frequent occurrence in the various cities of the country, and what such regulations shall be and to what particular trade, business or occupation they shall apply, are questions for the State to determine, and their determination comes within the proper exercise of the police power by the State, and unless the regulations are so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of the citizen are unnecessarily, and in a manner wholly arbitrary, interfered with or destroyed without due process of law, they do not extend beyond the power of the State to pass, and they form no subject for Federal interference.

As stated in *Crowley* v. *Christensen*, 137 U. S. 86, "the possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community."

Whether there is or is not a delegation of power by the common council to the mayor, is not in this case a Federal question.

We have no doubt that the ordinance, so far as the objection above considered is concerned, was clearly within the power of the State to authorize, and must be obeyed accordingly.

The other objection made to the validity of the ordinance is that the amount of the license fee ($100) is an improper and illegal interference with the rights of the citizen, and is, therefore, a violation of the Fourteenth Amendment.

The amount of the fee is fixed by the common council for the privilege of doing business, and the text of the ordinance and the amount of the fee therein named would seem to indicate that it is both a means adopted for the easier regulation of the business, and a tax in the nature of an excise imposed upon the privilege of doing it. In either case the State has power to make the exaction, and its exercise by the city under state authority violates no provision of the Federal Constitution.

The Supreme Court of Illinois has held that the city was authorized by the state law to impose the license fee.

In speaking of a license to do business, it was said in *Royall* v. *Virginia*, 116 U. S. 572, 579: "The payment required as a preliminary to the license is in the nature and form of a tax, and is due to the State which it may demand and exact from every one of its citizens who either will or must follow some business avocation within its limits, to the pursuit of which the assessment is made a condition precedent. It is an occupation tax, for which the license is merely a receipt and not an authority, except in that sense, because it is laid and collected as revenue, and not merely as incident to the general police power of the State, which, under certain circumstances and conditions, regulates certain employments with a view to the public health, comfort and convenience."

It is not a valid objection to the ordinance that it partakes of both the character of a regulation and also that of an excise or privilege tax. The business is more easily subjected to the operation of the power to regulate, where a license is imposed for following the same, while the revenue obtained on account of the license is none the less legal because the ordinance which authorized it fulfils the two functions, one a regulating and the other a revenue function. So long as the state law authorizes both regulation and taxation, it is enough, and the enforcement of the ordinance violates no provision of the Federal Constitution.

There is no error in the record, and the judgment of the Supreme Court of Illinois is

*Affirmed.*