Quinn, J.
This is a ease wherein the defendant, T. H. Eobertson, is prosecuted on the following charge:
“Before me, Wm. B. Quinn, Judge of the Criminal Court of Canton, Stark county, Ohio, personally appeared S. A. Lengel, who, being duly sworn according to law, deposes and says that on or about the first day of September, 1917, at the city of Canton, in the said county of Stark, one T. H. Eobertson did unlawfully hold a public meeting in and upon a public street in said city, to-wit, on Walnut avenue, S. E., for the purpose of speak *242 ing, whereby a number of people was then and there gathered together so as and in such manner as to interfere with the free and uninterrupted use of said street, and then and there the free and uninterrupted use of said street was interfered with by said people so gathered together, he, the said T. TI. Robertson, not having first obtained a permit to hold said meeting in said street from thg. director of public safety of said city as required by law, contrary to the form of the ordinance of said city in such eases made and provided, and. further 'the deponent says not.”
The affidavit charges a violation of the following ordinance:
"Ordinance No. 2061.
".Ordinance No. 2061 making it unlawful for persons to hold, public meetings upon any street, avenue, park or public place in the city of Canton, unless' a permit therefor is first obtained, and providing a penalty for violation thereof,
‘ ‘.Be it ordained by the council of the city of Canton, state of Ohio,'
"Section 1. It shall be unlawful for any person to hold a public meeting for the purpose of speaking, lecturing or for any religious purpose or for any similar purposes not named herein, whereby a number of people are gathered together so as to delay traffic or interfere with the free and uninterrupted use of the streets, avenues, alleys, parks and other public places in the city of. Canton, unless such person shall first have obtained a permit so to do from the director of public safety of said city.
".Section 2. Said permit may be issued by the director of public safety upon the application of the person desiring the same, who shall state in said application the nature and object for which said permit is desired, and if said application is allowed, it shall then he the duty of the director of public safety to specify the location where such public meeting, lecture or religious meeting may be held, which location shall be plainly set out upon the permit .together with the hours and the day or days when said permit may be used; provided, however, that the permit herein provided for shall in no case authorize the holder thereof to hold any meetings for the purpose or purposes named herein nearer than fifty (50) feet to the intersection of any street, avenue or alley within the city of Canton.
"Section 3. The director of public safety, upon being satisfied that any of the provisions of this ordinance have been violáted, may at his discretion revoke the privilege conferred by the permit herein provided for.
"Section 4. ' That any person violating any of thé provisions of'this ordinance shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not less than *243 ten ($10) dollars, nor more than fifty ($50) dollars, and the costs of prosecution.
“Section 5. This ordinance shall be in force and effect from and after the earliest period allowed by law.”
A demurrer has been filed by the defendant upon the following grounds, to-wit:
1. Said affidavit does not charge any offense in law.
2. 'The pretended ordinance under which said affidavit is filed is wholly void and without legal effect or force in law, because it contravenes and is in violation of the following sections and articles of the Constitution of the state of Ohio:
A. Article I, Section 3, which is as follows:
“The people have the right to assemble together, in a peaceable manner, to consult for their common good; to instruct their representatives; and to petition the General Assembly for the redress of grievances.”
B. Article I, Section 5, which is as follows:
“The right of trial by jury shall be inviolate, except that, in civil cases, laws may be passed to authorize the rendering of á verdict by the concurrence of not less than three-fourths of the jury.”
C. Article I, Section 11, which is as follows:
"Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press. In all criminal prosecutions for libel, the truth may be given in evidence to the jury, and if it shall appear to the jury that the matter charged as libelous is true, and was published with good motives, and for justifiable ends, the party shall be acquitted.”
3. The pretended ordinance under which said affidavit is filed is wholly void and without legal effect or force in law because it contravenes and is in violation of the following articles in addition to the amendment of the Constitution of the United States:
A. Article I, which is as follows:
“Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.” )
*244 B. Article YI, which is as follows:
“In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall .have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted .with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.”
Many authorities have been cited by counsel for the defendant on the question of free speech and it is claimed by defendant that this ordinance is invalid for the reason that it deprives the defendant of his constitutional right of free speech. Also that it prevents the exercise of the constitutional right of the people to assemble in a peaceful manner. An examination of the provisions of the ordinance does not reveal any questions such as defendant has attempted to raise involving the right of the people to assemble and the freedom of speech, as guaranteed by the Constitution of the United States. The question presented is rather one involving the free use of the streets for the holding of meetings and the delivering of speeches.
Section 3714 of the General Code of Ohio provides that:
“Municipal corporations shall have, special power to regulate the use of the streets, to be exercised in the manner provided by law. The council shall have the care, supervision and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts and viaducts, within the. corporation, and shall cause them to be kept open, in repair, and free from nuisance.”
There is not any question but what the council has the power to keep the streets open and free from nuisance. The question, then, presents itself, is the passage of the ordinance in question within the right of the council? 'The court is of the opinion that council not only has the right to keep the streets open and free from nuisance, but that under Section 3714, a duty is imposed in mandatory language requiring the doing of these things. Keeping in mind the fact that the city holds the use of the streets in trust for the public for street purposes, and that streets were not primarily dedicated to be used as public meeting places, but for purposes of traffic by pedestrians and vehicles of all description, the court is strongly of the opinion *245 that the council is not only authorized, but obliged, to prevent the use of our streets and highways for holding meetings whereby a number of people are gathered together so as to interfere with the free and uninterrupted use of the streets, and so as to delay traffic. The fact that it may be more convenient for those who may desire to hold public meetings in the streets, where crowds are more easily attracted and expenses are nothing, does not make it a constitutional privilege, included in the constitutional right of our citizens, to gether peaceably together for the purpose of debating on questions of general welfare and the privileges also given by the Constitution respecting free speech.
Therefore, for the purpose of this decision, we are eliminating as absurd the argument that the right of free speech is denied by this ordinance, because the streets are to ride and walk upon instead of delivering sermons, lectures and speeches upon, and because nowhere in the Constitution does it guarantee free speech, absolutely unlicensed, at any time or place, and especially not upon the public streets.
We now come to the main question raised by this demurrer, that is, is this ordinance invalid because of the fact that the council, who unquestionably have the right and duty of keeping the streets open and free from nuisances, have delegated the right to the safety director of the city to grant permits for the holding of public meetings under certain conditions on the streets? Section 2 of the ordinance provides that said permit may be issued by the director of public safety upon the application of the person desiring the same, who shall state in said application the nature and object for which said permit is desired; and if said application is allowed, it shall then be the duty of the director of public safety to specify the location where such public meeting, lecture, or religious meeting may be held, which location shall be plainly set out upon the permit used; provided, however, that the permit herein provided for shall in no case authorize the holder thereof to hold any meeting for the purpose or purposes named herein nearer than fifty feet to the intersection of any street, avenue, or alley within the city of Canton.
Section 3 of the ordinance provides that the director of public safety, upon being satisfied that any of the provisions of this *246 ordinance have been violated, may at his discretion revoke the privilege conferred by the permit herein provided for.
It is claimed that this delegation of somewhat arbitrary power to one man by the council is unreasonable and in excess of council’s authority. Let us consider some of the authorities cited by counsel on both sides.
In the 162 Mass., page 510, ease of Commonwealth v. Davis, we have an ordinance somewhat similar to the Canton ordinance providing that in the city of Boston no person shall, except by permit from the mayor, make any public address in or upon the public grounds of the city. It was held by the Supreme Court of Massachusetts, Judge Holmes, I believe the same man now in the Supreme Court of the United States, that said ordinance was constitutional and that the words, “public address” would apply to sermons delivered on the Boston Commons.
The court says in its opinion at page 511, that the argument that the ordinance is unconstitutional assumes that the ordinance is directed against free speech generally, whereas in fact it is directed toward the modes in which the Boston Commons may be used.
“There is no evidence before us to show that the power of the Legislature over the commons is less than its power over any other park dedicated to the use of the public, or over public streets the legal title to which is in a city or town. As representative of the public, it may and does exercise control over the use which the public may make of such places, and it may, and does, delegate more or' less of such control to the city or town immediately concerned. For the Legislature absolutely or conditionally to forbid public speaking in a highway or public park is no more an infringement of the rights of a member of the public than for the owner of a private house to forbid it in his house. When no proprietary right interferes, the Legislature may end the right of the public to enter upon the public place by putting an end to the dedication to public uses. So it may take the lesser step of limiting the public use to certain purposes.
“If the Legislature had power under the Constitution to pass a law in the form of the present ordinance, there is no doubt that it would authorize the city of Boston to pass the ordinance. * # # It is settled also that the prohibition in such an ordinance, which would be binding, if absolute, is not made invalid by the fact that it may be removed in a particular ease by a license from a city officer, or a less numerous body *247 than the -one which enacts the prohibition.” Citing Commonwealth v. Ellis, 158 Mass., 555.
This case seems very much in point, inasmuch as Article 39 of the statutes of Massachusetts conferred upon the city council the care and management of the public buildings and of all the property of the city. So, in the case at bar we have the council given -the right and duty of keeping the streets open and we have an ordinance passed by them prohibiting all meetings which delay traffic or interfere with the free and uninterrupted use of the streets, unless under certain conditions the safety director issues a permit. The city council could have absolutely prohibited the holding of public meetings on the street in such a way as to interfere with the primary use of the streets. Under the wording of the ordinance, meetings are not prohibited on the streets, which do not interfere with traffic or interrupt the free use of the streets by the public. It is not necessary to get a permit where traffic will not be delayed or the free use of the streets of the public interfered with by the meeting. But even where there is a delay of traffic, or interference with the free use of the streets on the part of the public, a permit may be given at the discretion of the safety director. Because the council, the legislative body, has the right to enact necessary legislation, it does not necessarily follow that they must enforce the provisions of the legislation themselves. When it comes to a matter of enforcing the law, it is up to the executive officers named by the council. Who is better fitted than the safety director, who is in charge of the fire and police departments and public safety generally, to pass upon the questions involved in the granting of a permit. He knows, or should know, where traffic is thickest. He is in a position to know the needs of the fire department for a clear street in rushing .to a fire. He knows how many police are available to keep order in the street crowds, and I can not see how there could be any better method devised for granting this special permit than the one provided for in this ordinance. It is contended that the safety director, in enforcing the present ordinance, has acted unfairly in that he has refused permits except under undesirable restrictions to the Socialist party. If the right to use the streets for public meetings was a natural, or constitutional, or inalienable right, then this argument might have some force; but here is a request made *248 for the use of the streets which, while customary in small towns where there is not much traffic, yet is a request for a right to interfere to some extent with the general public’s right to use the streets for the benefit of some particular organization?
Another thing to be considered is the fact that every time the city extends this right through the safety director, the city throws itself liable in ease of accidents and personal injuries growing out of said meetings and said gathering in the streets. Suppose there was no discretionary restriction .of this special privilege which may be granted. Every organization, religious, political, fraternal, of every kind whatsoever that might choose to do away with the expese of hiring a hall, could select the most desirable places on the public streets and hold forth regardless of the rights of the general public. In these days of many automobiles, street cars and pedestrians, we have arrived at the stage when the general good demands that public speeches be held on vacant lots or in places other than the public streets.
We have many laws enacted by the council because of legislative authority where the council has the right to, and does, delegate certain duties and discretion to executive officers of the city. Take, for instance, the plumbing laws of the city. The Legislature gives the council power to enact ordinances and the council in its ordinance delegates to the board of health authority to fix rules and regulations and even provide penalties. 'The constitutionality of this plumbing law has been upheld by the higher courts in numerous decisions. If the ordinance in question had provided that even in the cases where traffic would not be delayed and free use of the streets interfered with by the meeting, it would be necessary to get a permit from the safety director, then there would be more merit to defendant’s contention, as council would be going beyond their duty to keep the streets open, and therefore the delegation of authority to the safety director would possibly be beyond their power.
Counsel for the defendant have cited many authorities on the point involved. The court has examined all of them, but finds that most of them are not in point for the reason that they are decisions in cases where by said ordinances it was sought to prevent parades on public streets. The distinction is that the use of the streets for parades and processions is an entirely dif *249 ferent use than that of the streets for holding public meetings. The parades move along and do not interfere to any great extent, with the ordinary use of the streets by others, whereas the meetings involved in the ease at bar are stationary and do interfere with the rights of others. In a number of the cases cited the courts held it to be an unreasonable regulation to vest the power arbitrarily in the mayor to grant or refuse permission to parade the streets, with music, etc. The courts also held that laws to regulate parades must fix conditions expressly, and so that such conditions operate on all of the same class alike, and must not give the power of permitting or restraining processions to an unregulated official discretion.
In the case at bar the safety director is only given this discretionary power in cases where the natural and primary use of the street by the public is interfered with, and, as hereinbefore stated, the defendant is in no position to complain, because the privilege in the first place is not a matter of right.
In the 87 Iowa, at page 226, it was even held that an ordinance giving the mayor or marshal the right to stop parades conducted in such a manner as to obstruct or impede public travel on the streets, was valid. 'This was held notwithstanding the fact that to refuse to desist upon command of the mayor or marshal made one guilty of a misdemeanor.
In these days, where public affairs have become complicated because of the use of new inventions and the increase of population, it has become necessary to centralize responsibilities and to delegate authority in many ways. We have our humane workmen ’s compensation laws, where power is delegated by the Legislature to the Industrial Commission to make allowances of compensation even in eases where the manufacturers have not chosen to take industrial insurance. There have been test cases taken to the Supreme Court of Ohio wherein the manufacturers contended that to allow a board of this kind to give judgment against them was taking their property without due process of law and depriving them of their constitutional right to a jury trial; but the Supreme Court of our state, as well as the courts of other states, have always decided that the laws were constitutional. There may be some abuses of the discretion on the part of some of the executive officers who are given these discretionary powers, but on the whole they are used advantageously. *250 Take, for instance, the great powers given to the liquor license commissions and the interstate commerce boards. These- rights were always questioned at first as being unconstitutional, but, nevertheless, they were upheld by the courts.
Another contention of counsel in this case is that this ordinance deprives the defendant of his constitutional right to a trial by a jury, because of the fact that a violation is punishable only by a fine, and, under the laws of Ohio, where imprisonment is not part of the possible penalty, a jury trial can not be demanded. We do not believe that in view of the many decisions in this state involving the same question, that that contention can be seriously considered.
Another authority on the question of the delegation of power to one man is the case of Hall v. Geiger-Jones Company, decided by the Supreme Court of the United States during the past year. It was there contended that the power of the superintendent of banks to pass on the question of reputation and the past record of applicants for a license to do business under the state banking laws was too arbitrary, -and the court says:
“It is certainly apparent that, if the conditions are within the power of the state to impose, they can only be ascertained by an executive officer. Reputation and character are quite tangible attributes, but there can be no legislative definition of them that can automatically attach to or identify individuals possessing them, and necessarily the aid of some executive agency must be invoked. The contention of appellees would take from government one of its most essential instrumentalities, of which the various national and state commissions are instances. But the contention may be answered by authority. In Gundling v. Chicago, 177 U. S., 183, 44 L. Ed., 725, 20 Sup. Ct. Rep., 633, an ordinance of the city of Chicago was passed on which required a license of dealers in cigarettes, and, as a condition of the license, that the applicant, if a single individual, all of the members of the firm, if a co-partnership, -and any person or persons in charge of the business, if a corporation, should be of good character and reputation, and the duty was delegated to the mayor of the city to determine the existence of the conditions. The ordinance was sustained.”
Wherefore, the court is of the opinion that the ordinance in question, in so far as the defendant is in a position to complain of it, is valid, and defendant’s demurrer is overruled.