EDWARD F. METT and Another, Constituting a Copartnership, Doing Business under the Firm Name and Style of METT & MURPHY, Plaintiffs, *v.* THE CITY OF SCHENECTADY, NEW YORK, and Others, Defendants.

Supreme Court, Schenectady County, November 13, 1935.

*Charles M. Hughes* [*Raymond F. Louckes* of counsel], for the plaintiffs.

*Thomas W. Wallace, Corporation Counsel* [*George B. Smith* and *Laurence V. Benedict* of counsel], for the defendants.

ROGERS, J. This is an action to restrain the enforcement of an ordinance of the city of Schenectady regulating the sale of solid . fuel and requiring the coal dealers of the city to procure licenses and to pay a license fee.

The plaintiffs, coal dealers, contend that the ordinance is void, primarily because coal is not a commodity the sale of which may be regulated by city authority; that the license fee imposed is excessive, discriminatory and unfair; that the provisions in the ordinance for

compulsory insurance are beyond municipal authority; that the licensing board, under the provisions of the ordinance, may act arbitrarily in refusing licenses; that adequate State laws protect, as against fraudulent practices in the coal business; that the purpose of the ordinance is to aid the larger dealers in maintaining a monopoly by the elimination of the small dealers.

The city contends that the enactment is a proper exercise of its delegated police power and its statutory authority to enact ordinances, as provided by subdivision 13 of section 20 of the General City Law, which is in part as follows: " Preserve and care for the safety, health, comfort and general welfare of the inhabitants of the city and visitors thereto; and for any of said purposes to regulate and license occupations and businesses."

The city also contends that the license fee is not excessive and discriminatory.

The city concedes the requirements that the dealers carry liability insurance on their trucks, and that they cover their employees by workmen's compensation are not proper subjects of regulation by ordinance, but contends that these defects may be cured by amendment without impairing the validity of the licensing features of the ordinance.

The fundamental question to be considered, therefore, is whether the city may regulate by ordinance the sale of a common innocuous commodity, such as coal. It is true that the police power embraces a wide scope and legislative bodies have gone far in regulating lawful trades and occupations. The language in *Matter of Jacobs* (98 N. Y. 98, 114 [1885]) is now more realistic than prophetic: " Such legislation may invade one class of rights today and another tomorrow, and if it can be sanctioned under the Constitution, while far removed in time we will not be far away in practical statesmanship from those ages when governmental prefects supervised the building of houses, the rearing of cattle, the sowing of seed and the reaping of grain, and governmental ordinances regulated the movements and labor of artisans, the rate of wages, the price of food, the diet and clothing of the people, and a large range of other affairs long since in all civilized lands regarded as outside of governmental functions."

Private business today is by law being taxed, regulated, catechized and otherwise encompassed and interfered with to such an extent that it is on the verge of destruction. When legislative bodies finally adjourn, business men appreciate the " Breathing spells " of relief and struggle on with renewed hope for the future, for the moment ceasing contemplation whether they will withdraw their capital and go out of business. So, unless this ordinance fairly falls within the city's grant of power, " *To * * * preserve and*

*care for the safety, health, comfort and general welfare of the inhabitants,"* it should not be sustained.

Patently it has nothing to do with the safety, the welfare or comfort of the inhabitants. Coal is not food, fluid or drug, as meat, milk or a narcotic that might cause disease or baneful habits affecting the health and morals of the people. It is no more deleterious to the safety, health, comfort and general welfare of the inhabitants than cord wood, gasoline, fuel oil or clothing. All of these commodities are necessary for the general welfare, and it is no more necessary to regulate by ordinance the sale of one, than the other.

The city claims that the purpose of the ordinance is the general welfare in preventing fraud through inferior quality and short weight. It is difficult to understand why the same reason would not prevail as to any other common article of trade. Most commodities differ in quality and goods of inferior quality are sold legally, the only prohibition being false representation regarding quality. As to weight, the State laws already provide that coal shall be weighed by licensed weighers, whose weight slips shall accompany the delivery, and the city has its sealer of weights and measures who is authorized to check deliveries as to weight. Moreover, it is difficult to understand why a licensed dealer could not sell coal of inferior quality or short weight, as easily as an unlicensed dealer.

But, assuming that the city has authority to regulate this business, on the theory of preventing fraud, there should be some substantial proof that the people of Schenectady are suffering by the fraudulent practices of their coal dealers. There is no such proof. The record is barren of any individual case where fraud has been practiced by any small dealer. The only evidence on the subject is that of the sealer of weights and measures, that he received a few telephone calls from unidentified persons stating that they had been sold either poor coal or given short weight.

This ordinance is analogous to that considered by the court in *People ex rel. Moskowitz* v. *Jenkins* (202 N. Y. 53), wherein the court said (at p. 58): " These features of the statute plainly show its purpose, which was not to safeguard customers against fraud, but local shopkeepers from competition."

The court quoted the language of Judge PECKHAM in *People* v. *Gillson* (109 N. Y. 389, at p. 399) as follows: " It is evidently of that kind which has been so frequent of late, a kind which is meant to protect some class in the community against the fair, free and full competition of some other class, the members of the former class thinking it impossible to hold their own against such competi-

tion, and therefore flying to the legislature to secure some enactment which shall operate favorably to them or unfavorably to their competitors."

While the decision of Justice STALEY in *Smart* v. *City of Albany* (146 Misc. 60), dealing with that city's coal ordinance, is made upon the ground that the amount of the license fee was unreasonable, the learned justice did express doubt as to the city's authority to ordain in the premises. He states: " No specific grant of power to license has been called to my attention. (General City Law, § 20, subd. 13.) In the absence of such an authorization it is doubtful whether a license fee may be imposed by a municipality as the Legislature has entered the field of regulation of sales of coal and coke. (Agriculture & Markets Law, §§ 222–228, 32–45; Dillon Mun. Corp. [5th ed.] § 667; *Dunham* v. *Trustees of Village of Rochester*, 5 Cow. 462; *Greater New York Athletic Club* v. *Wurster*, 19 Misc. 443.) "

The learned justice does make the general observation: " Regulations respecting lawful trades or occupations are of frequent occurrence in the various cities of the country. To what business or occupation they may apply is a legislative question, not a question for the courts. Unless regulations are so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of citizens are unnecessarily and arbitrarily interfered with, they are not beyond the power of the State, and do not offend the Federal Constitution. (*Gundling* v. *Chicago*, 177 U. S. 183; 20 S. Ct. 633; 44 L. Ed. 725.) "

The ordinance under consideration in the *Gundling* case was one regulating the sale of cigarettes. Cigarettes, especially at that time (1900), were thought to be harmful to users, especially young people. Moreover, Chicago had authority to ordain as a regulation and also as an excise or privilege tax.

In the recent case (*New State Ice Co.* v. *Liebmann*, 285 U. S. 262; 52 Sup. Ct. 371) regulation of the ice business, in the hot climate of Oklahoma, was held unnecessary and improper. The court said: " The control here asserted does not protect against monopoly, but tends to foster it. The aim is not to encourage competition, but to prevent it; not to regulate the business, but to preclude persons from engaging in it. There is no difference in principle between this case and the attempt of the dairyman under state authority to prevent another from keeping cows and selling milk on the ground that there are enough dairymen in the business; or to prevent a shoemaker from making or selling shoes because shoemakers already in that occupation can make and sell all the shoes that are needed. We are not able to see anything peculiar in the business here in question which distinguishes it from ordinary manufacture and production."

Recently Justice Schenck held invalid an ordinance requiring a license to sell food or merchandise upon a cash basis from vehicles on the streets of Saratoga Springs (*General Baking Co.* v. *City of Saratoga Springs*, 149 Misc. 92). The court said: " Police power must be exercised subject to the provisions of the Constitution, both Federal and State, and it must appear that the interests of the public generally, as distinguished from those of a particular class, require such interference and that the means are reasonably necessary for the accomplishment of the purpose and are not unduly oppressive to individuals. Under the guise of protecting the public interest, the legislative body, in this case, the city council, may not arbitrarily interfere with private business or impose unusual restrictions upon lawful occupations  *  *  *.

" This ordinance has no possible relation to public health, maintaining order, protecting property or enforcing the law,  *  *  *.

" Such a business [selling bread and cake] is not subject to a licensing statute and the prohibition by this ordinance appears purely arbitrary and in violation of the due process clause of both the Federal and State Constitutions." (See U. S. Const. 14th Amendt.; N. Y. Const. art. 1, § 6.)

The seventy-five dollars license fee might be considered reasonable as related to the necessary and probable expense of enforcing the ordinance, but that is not the only consideration. The ability of the applicant to pay has a bearing, and the amount of the fee should depend somewhat upon the number of trucks used by the applicant, so not to freeze out the small dealer. The ordinance requires the little " snow-bird " dealer, who only operates part of the year, to pay seventy-five dollars license fee, and the large dealer, owning and operating twelve or fifteen big trucks, to pay only an additional twenty-five dollars. It would seem in fairness that there should be some reasonable graduation in fee between the dealer operating one small truck, and the dealer operating fifteen large trucks. If the license fee was twenty-five dollars for the dealer with one truck, and ten dollars additional per truck for dealers having more than one truck, it would seem to be more equitable, and smack less of a tax and would be much fairer to the thirty-five small coal dealers in the city of Schenectady.

In *Dugan Brothers, Inc.*, v. *Zorn* (145 Misc. 611), where the license fee of $100 on peddling bakery products was held unfair, the court said: " It is impossible to close the eyes to the fact that this license fee is, in reality, a tax, imposed to prevent competition with local merchants.  *  *  *  Under the guise of a license fee, the real fact is that a tax is sought to be imposed upon a lawful business, which it is beyond the power of the municipality to impose.  *  *  *

" Police inspection and regulation is a part of the ordinary work of the police force everywhere, and its cost cannot be even approximately estimated and apportioned, any more than it could be estimated how much wear upon the streets of a municipality would result from the operation of one of the plaintiff's trucks."

The apparent discretion given the licensing board to approve applications and the absence of any provision for automatic approval of applications and issuance of licenses upon payment of the license fee do not render the ordinance void. That question may only be raised by an applicant who has been refused a license. If he is entitled thereto he could compel its issuance by mandamus.

The ordinance offends the fundamental law and should be declared illegal and inoperative and the defendants should be enjoined from enforcing it.