### STATE v EUBANK

Ohio Appeals, 6th Dist, Lucas Co

Decided Jan 4, 1937

Frank E. Calkins, Toledo, for appellee.
Denman, Miller & Beatty, Toledo, for appellant.

## OPINION

By TAYLOR, J.

Appellant was found guilty in the Court of Common Pleas of having violated §§1047, 1056, 1058-1 and 1058-3, GC, in that he had unlawfully, wilfully and purposely operated a steam boiler of more than thirty horse power without obtaining a license so to do, and that he had permitted the boiler to be operated without being in charge of a duly licensed engineer or boiler operator.

Appellant owns and operates a large greenhouse in or near Sylvania in this county and heats this greenhouse by steam generated from two boilers, each of more than thirty horse power, which boilers have been operated by appellant through the day time and by a fireman employed by him during the night. Neither appellant nor his employee was or is licensed under the statutes in question.

Appellant was tried on an information presented by the prosecuting attorney of Lucas County, sufficiently alleging the aforesaid facts. Appellant demurred to this information on the ground that the statutes on which it was founded are unconstitutional in that they violate §§1, 2, 19, and 20 of Article I of the Constitution of Ohio and the Fourteenth Amendment of the Constitution of the United States. The demurrer was overruled, and the case proceeded to trial, without a jury, on the transcript of evidence taken in a certain action filed in the United States District Court at Toledo by appellant and four other owners of greenhouses, in which the plaintiffs sought to enjoin the Department of Industrial Relations of the state of Ohio and the Attorney General from enforcing these statutes. That case, we are informed, is still pending in that court, but awaits the final disposition of the present criminal proceeding. Appellant was found guilty and a fine of $25 was imposed. From that judgment he has appealed to this court on questions of law.

The statutes upon which this information and subsequent conviction are based are attacked by appellant upon four principal grounds, namely.

1. That employment of an operator or fireman of a stationary steam boiler is one of the ordinary common employments in which any citizen has a right to engage, "free from unreasonable regulations as to qualifications for the work."

2. That the requirement of the statute that one seeking to engage in this occupation must pass an examination in the subjects of the construction and operation of steam boilers, steam pumps and hydraulics "is arbitrary, discriminatory, unconscionable and unreasonable, as being unnecessary to qualify one for safe and successful operation."

3. That the attempted classification of

boilers and boiler operators is arbitrary, discriminatory, unconscionable and unreasonable.

4. That the statutes are unconstitutional as an illegal delegation of legislative power under the Ohio Constitution and as not meeting the due process clause of the federal Constitution.

Appellant concedes that the state of Ohio has power to regulate the operation of steam boilers, and hence our inquiry is limited to the question whether there has been an abuse of that power in the respects claimed so as to infringe rights possessed by appellant under the Constitutions of the United States and the state of Ohio.

As to the first contention that the occupation of an operator or fireman of a stationary steam boiler is an ordinary one in which any citizen has a right to engage, free from unreasonable regulations— this is a personal right to earn a livelihood in some desired occupation or employment. It is clear that appellant as the owner of a large greenhouse is not dependent for a living upon his labors in operating the boilers of his plant during the daytime, as he says he does. Nothing is more firmly established than that the constitutionality of a statute may not be attacked by one whose rights were not directly affected by its operation. See 12 Corpus Juris 762, and the many cases cited therein.

Therefore the complaint of appellant in this behalf must be restricted to the claim that he is compelled by the statute to employ a licensed rather than an unlicensed operator of these boilers at night during the cold season. Our attention has not been called to any evidence in the record that this would create an undue financial burden upon appellant. Hence we fail to see how he has sustained any injury of which he can complain.

Nor can appellant raise constitutional objections in behalf of his employee, that the latter may be deprived of the right to pursue an ordinary occupation by reason of the statutory requirement for a license. Jeffrey Mfg. Co. v Blagg, 235 U. S. 571, 59 L. Ed. 364, 35 S. Ct. 167; Hawkins v Bleakley, 243 U. S. 210, 61 L. Ed. 678, 37 S. Ct. 255; Erie Rd. Co. v Williams, 233 U. S. 685, 58 L. Ed. 1155, 34 S. Ct. 761.

We next consider the charge that the requirement of the statute, that the examination for license as an operator of a steam boiler or steam engine must comprise the subjects of the construction and operation of steam boilers, steam pumps and hydraulics, is arbitrary, discriminatory, unreasonable and unnecessary Much evidence has been presented showing the highly scientific nature of these various subjects, but we are not advised that these examinations actually deal with the abstruse branches thereof. We are at liberty to assume, in the lack of positive information, that examinations on the three prescribed subjects may be simple and elementary in their nature, sufficient only to show that the applicant knows something of the various kinds of boilers; how they are put together; something of the dangers which may arise from improper firing or the failure to keep sufficient water therein; the construction and use of steam pumps, and generally, under the heading of hydraulics, both the injection of water and the emission of steam. No complaint is made that these examinations are too severe, but merely that they might be. In that behalf, one witness testified that at the age of 20, after an experience of a few months as an oiler, he passed this or a similar examination. That did not indicate any undue severity as a general custom or practice. But in any event, appellant does not claim that he could not pass this examination, because he has not for a number of years presented himself to take it. His protest is against being required to take it, whether such examination should prove easy or difficult.

Appellant cannot complain of the law under these circumstances. As said in Smith v Cahoon, 283 U. S. 553, 75 L. Ed. 1264, 51 S. Ct. 582, on page 562 of the official opinion:

"The appellant did not apply for a certificate, and the principle is well established that when a statute, valid upon its face, requires the issue of a license or certificate as a condition precedent to carrying on a business or following a vocation, one who is within the terms of the statute, but has failed to make the required application, is not at liberty to complain because of his anticipation of improper or invalid action in administration."

And see Lehon v City of Atlanta, 242 U. S. 53, 61 L. Ed. 145, 37 S. Ct. 70; Gundling v Chicago, 177 U. S. 183, 44 L. Ed. 725, 20 S. Ct. 633.

Further, as pointed out in Williams v Mississippi, 170 U. S. 213, 42 L. Ed. 1012, 18

S. Ct. 583, it is not sufficient that a statute which grants a discretion to certain officers can be used for the abridgement of constitutional rights; it must be shown that the actual administration is evil, not that evil is possible under it.

The third objection as to the classification of boilers and boiler operators being arbitrary, discriminatory and unreasonable rests, in the main, upon two claims, namely, that no reason exists for requiring that boilers of more than thirty horse power be operated by a person licensed so to do while no such requirement is made as to boilers of less size or capacity; and, second, that the prescribed statutory method of computing horse power by the number of square feet of boiler heating surface is not the correct one.

As to this last, there is a conflict of evidence, appellee having offered testimony showing that such a method of computation is usable and proper. Hence we should overstep the bounds of judicial propriety did we attempt to substitute our judgment of this matter for that of the Geeral Assembly, so long as the latter has a foundation to rest upon, and is not merely capricious.

The first of these two contentions, that thirty horse power is an arbitrary and unreasonable limit to establish, would likewise require us, should we sustain it, to substitute our judgment for that of the legislative body. But in any event, it is admitted that appellant's two boilers are each of 100 horse power, and therefore the line of demarcation at thirty horse power is moot for the purposes of this case.

The fourth claim of appellant charges that these statutes are unconstitutional as an illegal delegation of legislative power and as not meeting the due process clause of the Constitution of the United States.

A former statute requiring the licensing of operators of steam engines and boilers, 94 Ohio Laws 33, was held unconstitutional by the Supreme Court of Ohio on this very ground, in Harmon v State, 66 Oh St 249, 64 NE 117, 58 L.R.A. 618. That act prescribed no standard of qualification, or any subjects for examination, but left everything to the "opinion, finding and caprice of the examiner." The court held that this was an unconstitutional delegation of legislative power to such examiner. Thereafter the General Assembly enacted §4364-89q, Revised Statutes, which is to all intents and purposes the same as present §1049, GC, and similar to §1058-1, GC. This statute was held constitutional in Judd v State, 10 C.C. (N.S.) 536, 20 C.D. 336, and this was affirmed by the Supreme Court, without opinion, in Judd v State, 79 Oh St 471, 87 NE 1137.

Lest it be said, however, that the present law is not identical with the statute there under consideration, we point out that the principles concerning the powers which may and may not be delegated by the Legislature have been long and firmly settled in this state.

In Cincinnati, Wilmington & Zanesville Rd. Co. v Commissioners of Clinton County, 1 Oh St 77, on page 88, Judge Ranney said:

"The true distinction, therefore, is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first can not be done; to the latter no valid objection can be made."

This was quoted with approval by the Supreme Court of the United States in Panama Refining Co. v Ryan, 293 U. S. 388, 426, 79 L. Ed. 446, 55 S. Ct. 241. This principle has been followed in numerous cases. See, among others, Green v Civil Service Commission, 90 Oh St 252, 107 NE 531; Yee Bow v Cleveland, 99 Oh St 269, 124 NE 132, 12 A.L.R. 1424; Fassig v State ex Turner, Atty. Gen., 95 Oh St 232, 116 NE 104.

Therefore, as it is conceded that the state has power to regulate the operation of steam boilers by requiring the operators to obtain a license so to do after examination, and the law itself has designated the subjects of such examinations, which are uniform throughout the state, it follows that the preparation of such examination papers and the holding of such examinations may lawfully be delegated to the appropriate administrative officers.

As to the claimed violation of the Fourteenth Amendment to the Constitution of the United States, it is sufficient to observe that the Fourteenth Amendment was not designed to restrict the police power of the states, or restrain them in the legitimate exercise of that power. Pacific Gas & Electric Co. v Police Court of the City of Sacramento, 251 U. S. 22, 64 L. Ed. 112, 40 S. Ct. 79; In Re Rahrer, 140 U. S. 545, 35 L. Ed. 572, 11 S. Ct.

865; Barbier v Connolly, 113 U. S. 27, 28 L. Ed. 923, 5 S. Ct. 357.

In Gundling v Chicago, 177 U. S. 183, 44 L. Ed. 725, 20 S. Ct. 633, the court said at page 188:

"Regulations respecting the pursuit of a lawful trade or business are of very frequent occurrence in the various cities of the country, and what such regulations shall be and to what particular trade, business or occupation they shall apply, are questions for the State to determine, and their determination comes within the proper exercise of the police power by the State, and unless the regulations are so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of the citizens are unnecessarily, and in a manner wholly arbitrary, interfered with or destroyed without due process of law, they do not extend beyond the power of the state to pass, and they form no subject for Federal interference."

The foregoing was quoted with approval in Schmidinger v City of Chicago, 226 U. S. 578, 57 L. Ed. 364, 33 S. Ct. 182, after which the court said at page 587:

"This court has frequently affirmed that the local authorities intrusted with the regulation of such matters and not the courts are primarily the judges of the necessities of local situations calling for such legislation, and the courts may only interfere with laws or ordinances passed in pursuance of the police power where they are so arbitrary as to be palpably and unmistakably in excess of any reasonable exercise of the authority conferred."

And finally, in Nebbia v New York, 291 U. S. 502, 78 L. Ed. 940, 54 S. Ct. 505, the court, in upholding the constitutionality of the Milk Control Law of the state of New York, said, on page 525:

"And the guaranty of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained."

Upon the foregoing considerations, therefore, we find no error in the record and proceedings, prejudicial to appellant, and it follows that the judgment of the Court of Common Pleas must be and is affirmed.

Judgment affirmed.

LLOYD and CARPENTER, JJ, concur.