MTW, INC., a Corporation, Plaintiff,

v.

The CITY OF MILWAUKEE, a municipal
corporation, Defendant.

No. 71–C–56.

United States District Court,
E. D. Wisconsin.

June 8, 1971.

Ted E. Wedemeyer, Jr., Milwaukee, Wis., for plaintiff.

John J. Fleming, City Atty., by Charles R. Theis, Asst. City Atty., Milwaukee, Wis., for defendant.

DECISION and ORDER

MYRON L. GORDON, District Judge.

The complaint in this action seeks to have certain portions of an ordinance of the city of Milwaukee declared unconstitutional. Injunctive relief is also sought. This decision concerns the plaintiff's request for a temporary restraining order.

The jurisdiction of the court is purportedly invoked under 28 U.S.C. § 1331, which gives this court jurisdiction as to matters arising "under the Constitution, laws, or treaties of the United States." The ordinance in question, at least upon its face, relates to licensing the sale of milk or milk products in the city of Milwaukee. The plaintiff urges that the legislative background of the ordinance demonstrates that it was designed to "retaliate" against certain out of state distributors; in spite of this claim,

there exists a doubt in my mind as to the presence of a federal question.

The ordinance in question provides, in part, that it is unlawful

"* * * to bring into, send into, or receive into the City of Milwaukee, for sale, or to sell, or offer for sale therein, or to have in storage where milk or milk products are sold or served, any milk or milk products defined in this chapter, unless the commissioner of health has issued a license authorizing said persons to do so."

This language is quite different in scope and content from that before the court in Baldwin v. G. A. F. Seelig, Inc., 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032 (1935), where the New York enactment attempted to regulate the price to be paid for milk in Vermont. Said the court, at p. 527, 55 S.Ct. at p. 502:

"* * * What is ultimate is the principle that one state in its dealings with another may not place itself in a position of economic isolation. Formulas and catchwords are subordinate to this overmastering requirement. Neither the power to tax nor the police power may be used by the state of destination with the aim and effect of establishing an economic barrier against competition with the products of another state or the labor of its residents. Restrictions so contrived are an unreasonable clog upon the mobility of commerce. They set up what is equivalent to a rampart of customs duties designed to neutralize advantages belonging to the place of origin. They are thus hostile in conception as well as burdensome in result."

I am not persuaded that the ordinance in question "establishes an economic barrier" against the plaintiff's products.

The ordinance involved in Dean Milk Co. v. City of Madison et al., 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329 (1951), was also patently discriminatory. At p. 354, 71 S.Ct. at pp. 297–298, the Supreme Court commented:

But this regulation, like the provision invalidated in Baldwin v. [G. A. F.] Seelig, Inc., *supra*, in practical effect excludes from distribution in Madison wholesome milk produced and pasteurized in Illinois. 'The importer * * * may keep his milk or drink it, but sell it he may not.' *Id.*, [294 U.S.] at [page] 521, [55 S.Ct. at page 500]. In thus erecting an economic barrier protecting a major local industry against competition from without the State, Madison plainly discriminates against interstate commerce. This it cannot do, even in the exercise of its unquestioned power to protect the health and safety of its people, if reasonable nondiscriminatory alternatives, adequate to conserve legitimate local interests, are available. Cf. Baldwin v. [G. A. F.] Seelig, Inc., *supra*, [294 U.S.] at [page] 524, [55 S. Ct. at page 500]; Minnesota v. Barber, 136 U.S. 313, 328, [10 S.Ct. 862, 866, 34 L.Ed. 455] (1890). A different view, that the ordinance is valid simply because it professes to be a health measure, would mean that the Commerce Clause of itself imposes no limitations on state action other than those laid down by the Due Process Clause, save for the rare instance where a state artlessly discloses an avowed purpose to discriminate against interstate goods. Cf. H. P. Hood & Sons v. Du Mond, *supra*. [336 U.S. 525, 69 S.Ct. 657, 93 L.Ed. 865]. Our issue then is whether the discrimination inherent in the Madison ordinance can be justified in view of the character of the local interests and the available methods of protecting them. Cf. Union Brokerage Co. v. Jensen, 322 U.S. 202, 211 [64 S.Ct. 967, 973, 88 L.Ed. 1227] (1944).

In the same case, the Supreme Court also noted that a city may impose reasonable inspection provisions, saying, at p. 355, 71 S.Ct. at p. 298:

"* * * The model provision imposes no geographical limitation on location of milk sources and processing plants but excludes from the munici-

pality milk not produced and pasteurized conformably to standards as high as those enforced by the receiving city. In implementing such an ordinance the importing city obtains milk ratings based on uniform standards and established by health authorities in the jurisdiction where production and processing occur."

■ A very recent ruling of the United States Supreme Court suggests that the ostensible "purpose" behind legislation is not automatically a controlling factor in evaluating its validity. State laws designed to promote safety on the highway succumbed to the overriding supremacy of the bankruptcy law in Perez v. Campbell, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233, decided June 1, 1971. The court observed that the technique of permitting a state legislature to frustrate federal law by asserting some other purpose                .

" * * * would enable state legislatures to nullify nearly all unwanted federal legislation by simply publishing a legislative committee report articulating some state interest or policy —other than frustration of the federal objective—that would be tangentially furthered by the proposed state law."

By analogy, a city ordinance which is valid on its face may not be condemned by the court because a legislative committee may have expressed an unworthy purpose in furthering its adoption.

■ The plaintiff argues that certain sections of the city ordinance impinge upon the free flow of goods in interstate commerce. However, for the purpose only of ruling on the present motion for a temporary restraining order, I conclude that the ordinance does not warrant federal court intervention. See Gundling v. Chicago, 177 U.S. 183, 20 S. Ct. 633, 44 L.Ed. 725 (1900).

■ Even if the plaintiff were able to establish the existence of a federal question, abstention would seem appropriate under the rulings of the United States Supreme Court in Reet v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed. 2d 68 (1970) and Railroad Commission of Texas et al. v. Pullman Company et al., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). State court interpretations of the relevant portions of the instant ordinance could well obviate the plaintiff's fears of discrimination.

The importance of having the state court's interpretation as to local legislation was recently highlighted in Coates v. Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214, decided June 1, 1971. The claim was made in that case that 14th amendment rights were violated by a city ordinance. At page ——, 91 S.Ct. at page 1688, the court commented on the state court's interpretation of the ordinance, stating:

" * * * the only construction put upon the ordinance by the state court was its unexplained conclusion that 'the standard of conduct which it specifies is not dependent upon each complainant's sensitivity.' Ibid. But the court did not indicate upon whose sensitivity a violation does depend—the sensitivity of the judge or jury, the sensitivity of the arresting officer, or the sensitivity of a hypothetical reasonable man.

"We are thus relegated, at best, to the words of the ordinance itself."

■ In view of the fact that I have doubts as to the plaintiff's ultimate prospects of success in this court, it follows that the motion for temporary relief should be denied. There would appear to be substantial defenses in favor of the defendant, and the court feels obliged to adopt here the standard announced in Greatway Corp. v. Great Way, Inc., 179 F.Supp. 774, 776 (E.D. Wis.1960):

"Temporary injunctions are a drastic remedy and should not be entered unless there is a great probability that the plaintiff will prevail in the action and that irreparable harm will occur to the plaintiff if defendant is not enjoined."

Since there is a doubt as to the plaintiff's probability of success, a temporary restraining order should not be granted. Flintkote Co. v. Philip Carey Co., 13 F.2d 850 (7th Cir. 1926); Selchow and Righter Co. v. Western Printing & Lithographing Co., 29 F.Supp. 569, 571 (E.D.Wis.1939).

Now, therefore, it is ordered that the motion for a temporary restraining order be and hereby is denied.